*In re* FRANCISCO ALBA, JR., *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Francisco Alba, Sr., Respondent-Appellant).

Second District   Nos. 2—88—0706, 2—88—0707 cons.

Opinion filed June 23, 1989.

Snively & Snively, of Rockford (William H. Snively, of counsel), for appellant.

Charles R. Hartman, State's Attorney, of Freeport (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Respondent, Francisco Alba, Sr., appeals from the order of the circuit court of Stephenson County placing custody and guardianship of his children, Lea Alba and Francisco Alba, Jr. (Frankie), with their natural mother, following adjudication of the children as abused minors.

Respondent contends on appeal that the finding that Lea and Frankie were abused minors is not supported by sufficient evidence because the evidence of abuse consisted entirely of out-of-court statements of Lea and Frankie which were not corroborated by any other evidence or subject to cross-examination.

Respondent had been granted custody of Frankie and Lea following a dissolution of marriage from their mother in 1984. On May 5, 1988, separate petitions were filed to adjudicate Frankie, who was then six years old, and Lea, who was then five years old, abused minors. The petitions alleged that Lea was an abused minor in that respondent had committed a sex offense against her (Ill. Rev. Stat. 1987, ch. 37, par. 802—3(2)(a)(iii)) and that Frankie was an abused minor in that his environment was injurious to his welfare, because he resided in the same household with his sexually abused sister (Ill. Rev. Stat. 1987, ch. 37, par. 802—3(2)(b)). Following a hearing on May 5, the Department of Children and Family Services was given temporary custody of both children. On June 14, supplemental petitions were filed alleging that Frankie was abused in that respondent committed a sex offense against him and that Lea was abused in that she resided in the same household as her sexually abused brother.

At the adjudicatory hearing conducted on June 15, 1988, Terry Hendrickson, the family service coordinator for NICA Head Start, testified that she knew Lea from Lea's participation in the Head Start program. On April 29, 1988, Hendrickson, who had become concerned about Lea's home life, asked Lea if she was having any problems at home. She said that when their daddy was mad at them he would spank them with a stick. During the discussion that ensued, Hendrickson asked Lea if she knew what private parts meant and pointed to various body parts to confirm Lea's understanding. Hendrickson then asked Lea if anyone touches her private parts. Lea responded, "[Y]es, daddy does." Later that day, Hendrickson again asked, "[D]oes daddy touch your private parts?" Lea answered,

"[Y]es, and he puts his favorite part in me." Hendrickson then asked Lea to draw a picture of her father and herself. Hendrickson asked Lea to draw a line from daddy's favorite part to where he places it on her, and Lea drew a line between the crotch areas of the two figures. The drawing was placed in evidence.

Pat Graham-Touhy, the educational services coordinator for the Family Advocate program in Rockford, testified that Lea and Frankie were referred to the program on May 19, 1988. Graham-Touhy saw both children on several occasions between May 19 and June 8. She related several statements the children made during her discussions with them. Both children had separately stated that they were "afraid of daddy." Additionally, Lea had told her "daddy touches my pee-pee" and "daddy touches my bottom." Frankie made similar statements. During a subsequent session Lea told Graham-Touhy that "daddy puts his dick in my mouth." On one occasion Frankie related that he had been orally and anally penetrated.

Bertha Brinkmeir, who served as the children's foster mother following their removal from respondent's custody, testified that on May 4, 1988, she took Lea for a medical examination. The examination was painful for Lea. Brinkmeir asked Lea if anybody had ever hurt her like that before. Lea responded, "[M]y daddy." On another occasion, Lea began to talk about "bad touches" stating that she had to touch "daddy's wiener." She also indicated that respondent had inserted a pen in her anus and that respondent's girlfriend, Michelle, had done the same to Frankie.

The State sought to call Frankie and Lea to testify. However, following *in camera* examinations to determine their competence to testify, the State withdrew Lea as a witness and then withdrew Frankie when the trial judge indicated he would sustain the objection to his testifying.

Donald R. Pearson, a psychologist specializing in diagnostics, testified that he examined Frankie on June 3, 1988. During the examination, Frankie was initially cooperative, open and alert. When asked about his natural parents, however, he became somewhat withdrawn. Pearson asked Frankie about punishment. Frankie responded that his father would hit him hard, his mother would pull his hair, and Michelle would slap him across the face. When asked if anybody did anything naughty to him, Frankie became withdrawn.

Pearson administered a battery of tests to Frankie. According to Pearson, about half of the tests did not yield valid results. One test which Pearson found significant involved having Frankie draw a house, a person, and a tree. Pearson noted that Frankie drew a per-

son with no body, but rather with arms and legs emanating from the head. According to Pearson, such a drawing was characteristic of somewhat younger children and could reflect retardation or neurological impairment, but could also reflect anxiety or other emotional factors. Pearson also administered the Bender Visual Motor Gestalt Test, which involved having Frankie reproduce designs printed on cards. Pearson noted that Frankie's tendency to separate overlapping figures in the designs was characteristic of children subjected to abusive adults.

Based on the various tests yielding valid results, Pearson stated that mental retardation was a possibility; however, in Pearson's opinion, Frankie exhibited an atypical pervasive developmental disorder reflecting exposure to unusual environmental conditions. Pearson stated that he believed Frankie had been subjected to cruel or inhuman treatment. Pearson rendered an opinion that Frankie had been physically abused. However, Pearson also stated twice that he could not conclude that Frankie had been sexually abused. On redirect examination, he agreed that environmental trauma could include sexual abuse.

Respondent, testifying on his own behalf, denied ever having sexual contact with Lea or Frankie.

Respondent contends that the evidence was insufficient to adjudicate Frankie and Lea abused minors as the only evidence of the alleged sexual abuse was out-of-court statements of the minors which were neither corroborated nor subject to cross-examination. The State does not dispute that the finding of abuse rested on the hearsay testimony. The State contends, however, that the out-of-court statements were sufficiently corroborated.

■ Section 2—18(4)(c) of the Juvenile Court Act of 1987 provides that "[p]revious statements made by the minor relating to any allegations of abuse or neglect shall be admissible in evidence. However, no such statement, if uncorroborated and not subject to cross-examination, shall be sufficient in itself to support a finding of abuse or neglect." (Ill. Rev. Stat., 1988 Supp., ch. 37, par. 802—18(4)(c).) Absent the foregoing legislation, the testimony of various witnesses as to statements made by Frankie and Lea would be inadmissible hearsay. (See *In re K.L.M.* (1986), 146 Ill. App. 3d 489, 493, 496 N.E.2d 1262.) However, while admissible, such testimony cannot alone support a finding of abuse if uncorroborated and not subject to cross-examination.

■ ■ The State asserts, without citation of authority, that Lea's drawing of herself and respondent provided sufficient corroboration.

We find this contention without merit. Lea's drawing was itself hearsay, which is testimonial or written evidence of a statement made out of court, such statement being offered as an assertion to show the truth of the matter asserted. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738; *People v. Westefer* (1988), 169 Ill. App. 3d 59, 63, 522 N.E.2d 1381.) Lea's drawing, produced in response to a request that she draw a picture showing where her father puts his "favorite part," and offered for no other purpose than to prove the truth of the matter depicted, is within this definition. (See *In re Dependency of Penelope B.* (1985), 104 Wash. 2d 643, 709 P.2d 1185.) Clearly, evidence which is in itself hearsay cannot provide the corroboration required by the statute.

The State also maintains that the expert testimony of Donald Pearson also could be "characterized" as corroborative evidence. We disagree. "Corroborate" has been defined as "to add weight or credibility to a thing by additional and confirming facts or evidence." (*In re Custody of Brunken* (1985), 139 Ill. App. 3d 232, 239, 487 N.E.2d 397.) What facts or evidence will serve as confirming or corroborative facts will necessarily vary depending on the facts to be corroborated. (*In re Custody of Brunken*, 139 Ill. App. 3d at 239, 487 N.E.2d at 401.) Here, the petitions for adjudication alleged that respondent sexually abused Frankie and Lea. There is nothing in Pearson's testimony which corroborates the hearsay evidence of sexual abuse, although Pearson concluded Frankie was physically abused.

Pearson stated that, based on his observation of behaviors exhibited by Frankie during his examination, he believed Frankie had been exposed to highly unusual environmental conditions. While expressing his opinion that Frankie's behavior related to environmental conditions, Pearson did not rule out the possibility of a neurological disorder. Pearson concluded that Frankie had been subjected to cruel or inhuman treatment. While Pearson rendered an opinion that Frankie was physically abused, he could not render an opinion that Frankie had been sexually abused. Pearson's acknowledgment on redirect examination that it is possible that the environmental trauma could include sexual abuse is insufficient to be considered as corroboration in view of his unequivocal statements on both direct and cross-examination that he had no opinion that Frankie was sexually abused. (See *In re Custody of Brunken*, 139 Ill. App. 3d at 240, 487 N.E.2d at 402.) While Pearson's opinion was that Frankie was physically abused, the State did not allege physical abuse in either its original petitions or supplemental petitions.

The State further argues that in the case at bar there was more

corroborative evidence than was present in *In re S.M.* (1988), 171 Ill. App. 3d 361, 525 N.E.2d 565, wherein this court affirmed a finding of abuse. However, that case involved the *in-court* testimony by the sexually abused victim, and previous statements of the victim were not used as evidence. Thus, the requirements of section 2—18(4)(c) did not apply to that case.

For the foregoing reasons, the judgments of the circuit court of Stephenson County are reversed.

Judgments reversed.

McLAREN and NASH, JJ., concur.