**STATE of Minnesota, Respondent,**

v.

**Orlando Manuel BOBADILLA,
Appellant.**

**No. A03–1891.**

Court of Appeals of Minnesota.

Dec. 21, 2004.

---

Mike Hatch, Attorney General, Thomas Rolf Ragatz, John B. Galus, Assistant Attorney Generals, St. Paul, MN; and Boyd A. Beccue, Kandiyohi County Attorney, Willmar, MN, for respondent.

John E. Mack, Mack & Daby, P.A., New London, MN, for appellant.

Considered and decided by TOUSSAINT, Chief Judge; WILLIS, Judge; and CRIPPEN, Judge.*

## OPINION

TOUSSAINT, Chief Judge.

Appellant Orlando Bobadilla challenges his convictions of first and second-degree criminal sexual conduct, arguing that the trial court abused its discretion in its evidentiary rulings and that the evidence is insufficient to support his convictions. We conclude that the trial court properly admitted the victim's statement to his mother and Bobadilla's statement against interest, and properly excluded Bobadilla's statement denying the allegations against him. However, because the victim's videotaped statement to the child-protection worker and police detective was testimonial in nature, and Bobadilla was not given the opportunity to cross-examine the witness, we reverse in part and remand for a new trial.

## FACTS

On Friday, May 2, 2003, Melissa Camarillo took her three-year-old son, T.B., to visit his father for the weekend. T.B.'s father lived with several relatives, including his brother, appellant Orlando Bobadilla. Camarillo testified that after picking T.B. up on Sunday at 11:00 p.m., she changed his pull-up and noticed that the area around his anus was red and irritated. When she mentioned this to T.B., he appeared nervous and began playing with his hair. T.B.'s mother reassured him that he could tell her anything and asked him again what happened. T.B. told his mother that "Uncle Orlando had put his finger in his booty."

T.B.'s parents took him to the hospital that night, where he was examined by Sandra Savage, M.D., who testified that she observed an abnormal erythema or redness around T.B.'s rectum that did not appear to be a diaper rash. She did not see any ulcerations or lesions that would lead her to believe that T.B. had a chronic problem in that area of his body. Dr. Savage opined that the injury was consistent with T.B.'s disclosure that Bobadilla had penetrated T.B.'s anus with his finger, but also stated that it could be consistent with other causes.

Several days later, Cherlynn Molden, a child-protection worker, and Matthew Akerson, a police detective, conducted a videotaped interview of T.B. at the Kandiyohi County Law Enforcement Center. Molden testified that she first drew pictures of T.B. and his parents. She also showed him a picture and asked him to name certain body parts. Later in the

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. Art. VI § 10.

interview, Molden asked T.B. whether anyone had hurt his body, and he replied, "Orlando did." Molden then asked T.B. how appellant had hurt him, and T.B. replied, "[H]e does stuff to my booty ... he put his finger in my booty." When asked to identify his "booty" on the diagram, T.B. pointed to his buttocks.

Molden also asked T.B. specific questions regarding the circumstances surrounding the alleged sexual assault. First, Molden asked T.B. where and how many times the incident occurred. T.B. replied that it occurred "one time" while he was lying down in his "dada's" room. Next, Molden asked T.B. if Bobadilla said anything when the incident occurred, and T.B. replied that Bobadilla said he was "sorry." Finally, Molden asked T.B. where his father was at the time of the incident, and T.B. replied that his father went downstairs to get the "kitty."

Based on T.B.'s statement to his mother and the videotaped interview, the state charged Bobadilla with first and second-degree criminal sexual conduct. On September 2, 2003, the trial court conducted a competency hearing and concluded that T.B. was not competent to testify at trial. Nonetheless, during a pretrial hearing, the court admitted T.B.'s statement to his mother and his videotaped interview. The court found that the time, content, and circumstances of the statements and the reliability of the recipients of those statements provided sufficient indicia of reliability. But the court excluded, as hearsay, Bobadilla's statement to Detective Akerson denying the charges against him.

At Bobadilla's trial, T.B.'s mother and father, Dr. Savage, Molden, and Detective Akerson testified for the state. The videotaped interview was played for the jury, and Molden testified about the contents of the interview. T.B.'s father testified that he left T.B. alone only when he went to retrieve the cat, and that he was downstairs for a matter of seconds. He acknowledged, however, that he might have told police that he was gone for five minutes or so.

Before the state rested its case, it offered as evidence Bobadilla's statement, to Detective Akerson, that T.B.'s father was looking for the cat for 15 to 20 minutes. The trial court concluded that the statement was admissible under Minn. R. Evid. 804(b)(3) and 801(d)(2), but only if Detective Akerson could recall Bobadilla's statement without referring to the transcript. On redirect, Detective Akerson testified that Bobadilla told him that T.B.'s father was looking for the cat for 15 to 20 minutes.

Bobadilla also testified at trial. He testified that he did not recall his statement to Detective Akerson regarding the amount of time T.B.'s father was looking for the cat, and he denied T.B.'s allegation.

On September 4, 2003, the jury found Bobadilla guilty of first and second-degree criminal sexual conduct. Bobadilla was sentenced to 144 months in prison. This appeal follows.

## ISSUES

I. Did the trial court abuse its discretion by (1) admitting T.B.'s videotaped statement to the child-protection worker and police detective; (2) admitting T.B.'s out-of-court statement to his mother; (3) admitting Bobadilla's statement regarding the length of time T.B.'s father was looking for the cat? (4) excluding Bobadilla's statement to police denying the charges against him.

## ANALYSIS

"Evidentiary rulings rest within the sound discretion of the trial court and will not be reversed absent a clear abuse

of discretion. On appeal, the appellant has the burden of establishing that the trial court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn.2003) (citations omitted). If the trial court has abused its discretion in admitting evidence, the reviewing court determines "whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *State v. Post*, 512 N.W.2d 99, 102 n. 2 (Minn.1994). If there is a reasonable possibility that the verdict might have been more favorable to the defendant without the evidence, then the error is prejudicial. *Id.*

Initially, we note that the state is asserting that because Bobadilla never raised his evidentiary claims at trial, he waived his right to raise them on appeal. While issues not raised at trial are generally waived on appeal, *State v. Vick*, 632 N.W.2d 676, 684–85 (Minn.2001), we reserve the right to consider those issues, particularly when they are raised in criminal cases.

### 1. T.B.'s Videotaped Statement

At a competency hearing, the state concluded that three-year-old T.B. was not competent to testify at trial. As a result, the state offered, as substantive evidence, a videotaped interview between T.B. and the child-protection worker and police detective. The trial court admitted the statement, concluding that the time, content, and circumstances of T.B.'s videotaped statement, and the fact that the child-protection worker had no reason to lie and did not ask leading questions, provided sufficient indicia of reliability. Bobadilla argues that admission of T.B.'s videotaped statement violated his Sixth Amendment right to confront the witness. We agree.

Until recently, out-of-court hearsay statements were admissible if the trial court determined that the statement bore sufficient "indicia of reliability." *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). However, in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) the United States Supreme Court re-evaluated its prior ruling as it applied to testimonial statements. The Supreme Court explained that, "[r]eliabilty is an amorphous, if not entirely subjective, concept" that "is fundamentally at odds with the right of confrontation." *Id.* at 1370–71. As a result, the Supreme Court rejected the *Roberts* reliability test, holding that where *testimonial* evidence is at issue, the Sixth Amendment requires that the (1) declarant be unavailable to testify; and (2) defendant have a prior opportunity to cross-examine the declarant. *Id.* at 1374.

The Supreme Court did not define the term "testimonial," but listed three different categories of testimonial statements, including statements made during police interrogations. *Id.* at 1364. While the Supreme Court did not specifically identify videotaped statements to child-protection workers as "testimonial," this court has held that under *Crawford*, such statements are "testimonial." *State v. Courtney*, 682 N.W.2d 185, 196 (Minn.App.2004), *review granted* (Minn. Sept. 29, 2004).

In light of the recent caselaw and the facts in this case, we conclude that T.B.'s videotaped statement was testimonial. The child-protection worker interviewed T.B. in the presence of Detective Akerson. She asked T.B. whether anyone had hurt him, who hurt him, and how he was hurt. These circumstances clearly indicate that the interview was conducted for purpose of developing a case against Bobadilla, and therefore, the answers elicited were testimonial in nature. *See Courtney,*

682 N.W.2d at 196 (holding that a child's videotaped statement to child-protection worker and police officer regarding the facts surrounding his mother's assault was testimonial because the interview was conducted for the purpose of developing a case against the defendant). Because the videotaped statement was testimonial, it is inadmissible because T.B. was unavailable and Bobadilla did. not have a prior opportunity to cross-examine T.B. *See Crawford,* 124 S.Ct. at 1374. Thus, under *Crawford,* admission of T.B.'s videotaped statement violated Bobadilla's Sixth Amendment right to confront T.B. Because Bobadilla was denied his Sixth Amendment right to confront the witness, he is entitled to a new trial. We also note that because T.B.'s videotaped interview was inadmissible under *Crawford,* the trial court also abused its discretion in allowing the child-protection worker to testify about the contents of that interview. Because we are reversing Bobadilla's conviction for first and second-degree criminal sexual conduct and remanding for a new trial, we need not address Bobadilla's sufficiency-of-the-evidence claim.

### 2. *T.B.'s Statement to his Mother*

██ Next, Bobadilla argues that the trial court erred in admitting T.B.'s statement to his mother. T.B.'s statement to his mother was not testimonial. T.B.'s mother questioned T.B. about the redness around his anus out of concern for his health, not because she expected to develop a case against Bobadilla. *Cf. Courtney,* 682 N.W.2d at 196 (holding that a child's videotaped statement was testimonial where the interview was conducted for the purpose of developing a case against the defendant).

Because the statement was not for the purpose of developing a case against Bobadilla it is not testimonial, under *Crawford.*

*See Crawford,* 124 S.Ct. at 1374. Instead, we ask whether the trial court abused its discretion in admitting the statement under Minn.Stat. § 595.02, subd. 3 (2002), which sets the standard for determining when out-of-court statements made by children are admissible.

Minn.Stat. § 595.02, subd. 3, provides that

> [a]n out-of-court statement made by a child under the age of ten years . . . alleging, explaining, denying, or describing any act of sexual contact . . . performed with or on the child . . . not otherwise admissible by statute or rule of evidence, is admissible as substantive evidence if:

(a) the court or person authorized to receive evidence finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement and the reliability of the person to whom the statement is made provide sufficient indicia of reliability;

(b) the child . . . either

(i) testifies at the proceedings; or

(ii) is unavailable as a witness and there is corroborative evidence of the act; and

(c) the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

In admitting the T.B.'s out-of-court statement to his mother, the trial court found that (1) T.B. made the statement the same night he returned home from visiting with his father; (2) the statement was not one usually described or volunteered by a

child; (3) the mother's questioning was not suggestive or leading; and (4) the mother had no reason to lie. Accordingly, the court concluded that there was sufficient indicia of reliability to admit the statement. The court also found that even though T.B. was not competent to testify at trial, the consistency of his statement over a period of time, and the fact that his mother had no reason to lie, corroborated his statement. In light of these findings and the requirements of Minn.Stat. § 595.02, subd. 3, we find that the trial court did not abuse its discretion in admitting T.B.'s out-of-court statement to his mother.

### 3. Bobadilla's Inculpatory Statement

■ Bobadilla argues that trial court erred in admitting into evidence his statement to Detective Akerson that T.B.'s father was looking for the cat for 15 to 20 minutes. The trial court concluded that it was a "statement against interest that tended to subject him to criminal liability based on timing," and admitted the statement under Minn. R. Evid. 804(b)(3) and 801(d)(2).

### 4. Bobadilla's Exculpatory Statement

■ Finally, Bobadilla also argues that the trial court erred in excluding, as hearsay, his statement to Detective Akerson denying T.B.'s allegation. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Minn. R. Evid. 801(c). Bobadilla offered the exculpatory statement to prove its truth, and therefore, it was hearsay. Because the exculpatory statement was hearsay, and it does not fall within one of the hearsay exceptions, the trial court did not abuse its discretion in excluding the statement.

We conclude that the court acted within its discretion in admitting the statement under Minn. R. Evid. 801(d)(2)(A). Under rule 801(d)(2)(A), a statement is not hearsay if it "is offered against a party and is . . . the party's own statement, in either an individual or a representative capacity." Because Bobadilla's statement regarding the amount of time T.B.'s father was looking for the cat was offered against Bobadilla in order to show that he had the opportunity to sexually assault T.B., the statement is not hearsay under rule 801(d)(2)(A).

### DECISION

Because T.B.'s out-of-court statement to his mother was not testimonial, the district court did not abuse its discretion in admitting it as substantive evidence under Minn. Stat. § 595.02, subd. 3 (2002). Further, the district court did not abuse its discretion in concluding that Bobadilla's inculpatory statement was admissible under 801(d)(2)(A). Because Bobadilla's statement to Detective Akerson denying T.B.'s allegation was hearsay, the district court did not abuse its discretion in excluding the statement.

However, because T.B. was not competent to testify at trial, and Bobadilla did not have a prior opportunity to cross-examine T.B., the district court's admission of T.B.'s videotaped interview violated Bobadilla's right to confrontation. Accordingly, the district court also erred in allowing the child-protection worker to testify about the contents of the videotaped interview. Bobadilla is therefore entitled to a new trial.

**Affirmed in part, reversed in part and remanded.**