THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL GARCIA-CORDOVA, Defendant-Appellant.

Second District   No. 2—07—0550

Opinion filed June 26, 2009.—Rehearing denied July 28, 2009.

470

Patricia Unsinn and Levi S. Harris, both of State Appellate Defender's Office, of Chicago, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Lawrence M. Bauer and Edward R. Psenicka, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

On February 8, 2007, a jury found defendant, Daniel Garcia-Cordova, guilty of three counts of predatory criminal sexual assault of a child (720 ILCS 5/12—14.1(a)(1) (West 2004)). On defendant's motion for judgment notwithstanding the verdict, the trial court entered judgments of acquittal on two of the three counts for which the jury had returned guilty verdicts. Defendant was sentenced to 24 years' imprisonment on the remaining count. Defendant filed a motion to reconsider the sentence, which the trial court denied. Defendant then appealed. We initially dismissed this appeal for lack of jurisdiction on February 27, 2009, having found that defendant's notice of appeal was premature. *People v. Garcia-Cordova*, No. 2—07—0550 (2009) (unpublished order under Supreme Court Rule 23). The Illinois Supreme Court issued a supervisory order on April 7, 2009, which vacated our February 27, 2009, order and directed us to treat defendant's notice of appeal as validly filed.

On appeal, defendant raises three issues: (1) whether testimony regarding the victim's out-of-court statements was inadmissible under *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct.

1354 (2004); (2) whether the trial court erred in admitting evidence that defendant had been sexually abused as a child; and (3) whether the trial court abused its discretion in sentencing defendant to 24 years' imprisonment. For the reasons that follow, we affirm.

## BACKGROUND

On April 26, 2006, defendant was indicted on two counts of predatory criminal sexual assault of a child. Count I alleged that between April 5, 2005, and April 5, 2006, defendant, being over the age of 17, committed an act of sexual penetration with the victim, C.R., who was under the age of 13, in that defendant placed his penis in the mouth of C.R. Count II alleged that between April 5, 2005, and April 5, 2006, defendant, being over the age of 17, committed an act of sexual penetration with C.R., who was under the age of 13, in that defendant placed his finger in the vagina of C.R.

Following a hearing pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—10 (West 2006)), the trial court determined that statements C.R. had made to witness Jennifer Bare[1] were not testimonial statements pursuant to *Crawford* and were otherwise admissible under section 115—10. The trial court also determined that statements C.R. made to Christina Kruschwitz, an investigator with the Department of Children and Family Services (DCFS), were testimonial and, thus, pursuant to *Crawford*, would be admissible at trial only if C.R. were to testify at trial.

On July 12, 2006, defendant was indicted on six additional counts of predatory criminal sexual assault of a child. Count III alleged that between April 5, 2005, and April 5, 2006, defendant, being over the age of 17, committed an act of sexual penetration with C.R., who was under the age of 13, in that defendant placed his penis in the vagina of C.R. Counts IV through VIII contained the same allegations as count II. In response to a request for a bill of particulars, the State specified that counts IV, V, VI, and VII were all separate and independent acts of penetration. Count VIII was nol-prossed on September 27, 2006.

Following an unsuccessful motion to suppress the written statement he gave to the police, defendant filed a motion *in limine* seeking to keep out portions of the written statement. Specifically, defendant sought to prevent the admission of those portions in which he stated that he had been sexually abused as a child and that he was a drug addict and alcoholic. The trial court granted defendant's motion *in limine*

---

[1]Throughout the record, Bare's name is spelled in a variety of ways, including "Bare," "Bere," and "Bara." As "Bare" was the spelling given by the witness at trial and is the spelling used by the parties in their briefs, we will refer to the witness as "Bare."

with respect to defendant's statement that he was a drug addict and alcoholic, but denied the motion with respect to defendant's statement that he had been sexually abused as a child.

Defendant's trial began on February 7, 2007. Jennifer Bare testified first. Bare testified that she was a student at the Scholl University Clinic in North Chicago, Illinois. While working in the clinic one day, a patient came in with her two daughters, one of whom was C.R. While the patient was getting an X-ray, Bare sat in the clinic hallway with the two little girls. Bare testified that while sitting in the hallway, C.R. asked her if she could keep a secret. Bare responded in the affirmative, after which C.R. told Bare that her father "makes [her] put his thing in [her] mouth."

C.R.'s mother, Michelle, testified that she had two daughters: C.R. and Danielle. C.R. was seven at the time of trial. Defendant, Michelle's ex-boyfriend, was the biological father of Danielle but not of C.R. Michelle testified that she had known defendant for six years and that she had lived with him for one year.

C.R. testified next. She testified to some general preliminary matters, such as her age, family members, and schooling. When asked if she lived with someone else before she lived with only her mother and Danielle, C.R. answered no. When asked if she knew somebody she called father or Daniel, she shook her head. The record does not specifically indicate whether she shook her head back and forth or nodded up and down. She did, however, identify defendant in court as the person she referred to as Danny or her stepdad. The State then asked if C.R. recalled going to a medical clinic with her mother and telling someone there a secret. C.R. testified that she did not remember doing that.

C.R. did testify that she recalled meeting with someone named Christina and that a person named Alan was also present when she met with Christina. C.R. testified that she recalled speaking with Christina and drawing pictures during their meeting. She did not recall why she spoke with Christina or what the room looked like when she spoke to Christina. C.R. identified People's Exhibit 7 as a drawing she made. When asked what the picture was about, C.R. responded, "It was a long time ago." C.R. identified herself and defendant's hand in the drawing. She gave no response when asked what defendant's hand was doing in the drawing. When asked whether she printed the words on the drawing, C.R. shook her head but gave no audible response, and the record does not specifically indicate whether C.R. shook her head back and forth or nodded up and down. When shown People's Exhibit 9, which consisted of a single sheet of paper with two separate drawings on it, C.R. identified a drawing of

her, Danielle's, and defendant's faces with "blankies" below their faces. She did not recall what the blankets were on. She also identified on Exhibit 9 a drawing of herself and defendant sitting on a couch. She testified that she did not know what defendant was doing on the couch. The State then showed C.R. People's Exhibit 6. She testified that she did not recall drawing People's Exhibit 6. C.R. testified that she did not know why she drew any of the pictures of herself and defendant.

When shown People's Exhibits 1 and 2, which were charts of a female child's anatomy from the front and back, C.R. testified that she did not remember ever seeing them. C.R. testified that she recalled seeing People's Exhibit 3, a chart of a male child's anatomy from the front, but did not recall when she saw it or whether she drew anything on it. She also testified that she recalled seeing People's Exhibit 4, a chart of a male child's anatomy from the back, but did not recall when or where she saw it.

C.R. testified that she recalled when defendant lived with her, her mother, and her sister, but testified that she did not recall anything happening in her bedroom or on the couch. C.R. also testified that she did not know what part of the body the bottom part of a bathing suit covered and that she did not know whether there were certain parts of her body that should not be touched.

Defense counsel did not cross-examine C.R.

Sergeant Alan Lother of the Zion police department testified that as a result of receiving an incident report from DCFS in March 2006, he contacted C.R.'s mother. On April 4, 2006, he and Kruschwitz met with C.R. at the Lake County Advocacy Center. During that meeting, Lother's role was simply to take notes.

Lother testified that he also interviewed defendant on April 4, 2006, at the Zion police department following the meeting with C.R. Assisting Lother in interviewing defendant was Lieutenant Kirk Henderson; Lother, however, was the primary interviewer.

Lother testified that after reading defendant his *Miranda* rights, he informed defendant of the specific allegations that C.R. had made against him. Defendant denied having abused C.R. According to Lother, he and defendant discussed defendant's life and his relationship with C.R. and her mother. During that conversation, Lother testified, defendant stated that he had been a victim of sexual abuse when he was a child. Lother testified that he then told defendant that "a lot of times people who are victims of things later on create similar situations to that; that they will treat others the same way they were treated because that is how they understand that expression." At one point, Lother suggested that defendant loved C.R. and that defendant

was taught to express love through his alleged actions. According to Lother, defendant's demeanor changed from nervous to more relaxed.

After Lother continued to talk about defendant's abuse as a child, defendant told Lother that whatever C.R. said was true. Lother explained that defendant needed to be more specific about what happened. According to Lother, defendant then stated that about three weeks prior, he had gone into C.R.'s room, pulled down his pants, and rubbed his penis on C.R.'s lips. Lother also testified that defendant stated that he placed his penis in C.R.'s mouth, did not have an erection, and did not ejaculate. Defendant also told Lother that when he rubbed his penis on C.R.'s mouth, C.R. rolled away. Defendant informed Lother that he felt guilty about what he had done.

Lother testified that defendant also said that while sitting on the couch with C.R., he had reached down her pants and touched her vagina not more than five times. Lother further testified that defendant also stated that on several other occasions he had reached into C.R.'s underwear and done "similar acts" while C.R. was in his bed. Defendant did not say how many times he had done this while C.R. was in his bed. Lother testified that he spoke to defendant in a very calm manner and in a subdued tone of voice.

Lother testified that after defendant had related these occurrences orally, he agreed to provide a written statement. Lother provided defendant with a pen and paper, and Lother and Henderson left the room while defendant wrote the statement. After approximately 10 minutes, Lother and Henderson returned to the room and found that defendant had completed the written statement. Both defendant and Lother signed the written statement. Lother identified People's Exhibit 11 as defendant's written statement. It read:

"I Daniel G had been sexualy [sic] abbused [sic] when I was a child and I never talk [sic] to eny [sic] one about it when it happend [sic]. Now I made a mistake off [sic] tuching [sic] my [d]augther [sic] [C.R.] on her pryvete [sic] part and putting my peenes [sic] around her lips. I need help. I'm so sorry for what I have done; never in my heart I [sic] want to hurt my family. But I did."

On cross-examination, Lother testified that during the interview, Henderson yelled at defendant three times. On redirect examination, Lother testified that as defendant was providing details of specific occurrences, he would begin to "withdraw from his confession," "back away," and make denials. According to Lother, "Henderson leaned forward and said you did do this, and you already said that. Mr. Garcia began to lower his head and withdraw from the conversation. Sergeant Henderson at the time challenged him very directly and said you did that. You said you did it. Say it with me, I stuck my penis in her

mouth. And he said that t[w]o or three times." Lother testified that after Henderson made those statements to defendant, defendant said that he put his penis in C.R.'s mouth. Lother further testified, however, that this was not the first time defendant had admitted putting his penis in C.R.'s mouth. Rather, Henderson's statements were meant to bring defendant back to the admission he had already made.

Henderson testified that he assisted Lother in interviewing defendant, but that Lother was the primary interviewer. Henderson testified that during the interview of defendant, he did raise his voice to defendant. According to Henderson, he raised his voice with defendant because defendant had made admissions of placing his penis in C.R.'s mouth and touching her vagina under her clothes, but would then begin to recant those statements. Henderson testified that he raised his voice with defendant to "remind him of what he had just told [the officers] and that [Henderson] wasn't going to accept and pretend that what he just told [the officers] had never taken place." Defendant would then return to his admissions. Henderson testified that he would describe the voice he used not as yelling or screaming, but as a "loud, commanding voice." Henderson did not, he testified, tell defendant anything that defendant had not previously said.

On cross-examination, Henderson testified that he was forceful with his voice and that he told defendant to say in unison with Henderson that defendant had stuck his penis in C.R.'s mouth. Henderson did not recall the number of times he told defendant to say that, but he did not believe it was more than twice. On redirect examination, Henderson testified that before he told defendant to say that he had stuck his penis in C.R.'s mouth, defendant had already admitted that he had stuck his penis in C.R.'s mouth. Henderson also testified that he did not raise his voice and tell defendant to say that he put his hand or finger in C.R.'s vagina.

Christina Kruschwitz testified next. Prior to her testimony, however, defendant requested that the trial court bar her from testifying about statements C.R. had made to her. Defendant argued that the testimony of what C.R. told Kruschwitz was inadmissible under both section 115—10 and *Crawford* because defendant was unable to cross-examine C.R. about those statements. According to defendant, C.R. was unavailable for cross-examination on the statements because while C.R. testified that she remembered meeting with Kruschwitz, she also testified that she did not remember why she met with Kruschwitz. Defendant also asked that the trial court strike Bare's testimony on the same basis. The trial court denied defendant's request, finding that C.R. was, in fact, available for cross-examination. The trial court also found, with respect to the admissibility of

Kruschwitz's and Bare's testimony under section 115—10, that defendant's statement to police provided sufficient corroboration for C.R.'s statements to Kruschwitz and Bare, so as to render them admissible under section 115—10.

Kruschwitz testified that she was a child protection investigator with DCFS and that on April 4, 2006, she interviewed C.R. at the Lake County Children's Advocacy Center. Also present during the interview was Lother, who took notes. Kruschwitz testified that at the beginning of the interview, she asked C.R. about the difference between the truth and a lie. When asked how C.R. responded, Kruschwitz testified, "[C.R.] gave me her definition of both the truth and a lie, which appeared to show that she understood the difference." Defense counsel objected and the trial court sustained the objection. Kruschwitz then testified that she did not recall the definitions that C.R. gave for the truth and a lie and that the only other thing that C.R. stated about the truth and a lie was that it was better to tell the truth.

During the interview, Kruschwitz showed C.R. charts of the anatomy of both a male and a female child. Kruschwitz identified People's Exhibits 1, 2, 3, and 4 as the anatomical charts that she showed C.R. during the meeting. Kruschwitz testified that C.R. told her that on a female, it was not okay to touch the breasts, vagina, and belly. C.R. also told her that on a male, it was not okay to touch his "private."

Kruschwitz testified that she asked C.R. to tell her about the secret C.R. had shared with the nurse (presumably Bare). According to Kruschwitz, C.R. stated that her father put his penis in her mouth. C.R. said that on a Saturday night a few weeks prior to the meeting with Kruschwitz, her father came into her bedroom, touched her lips with his penis, and then placed his penis in her mouth. C.R. then rolled off the bed onto the floor. He then tried to put his penis back into her mouth a second time before walking out of the room. C.R. told Kruschwitz that his penis was soft, nothing was on it, and nothing came out of it. Kruschwitz testified that she then asked C.R. to identify on the anatomical charts what part of her father's body was placed in her mouth and what part of her body was touched by his penis. Kruschwitz testified that C.R. circled the penis on the male chart and the mouth on the female chart.

Kruschwitz also testified that C.R. told her that one time while C.R. and her father were sitting on the couch, he put his hand under her underwear and put his fingers in her vagina. C.R. also told Kruschwitz that on multiple occasions (C.R. did not provide a specific number), while lying in her father's bedroom with him and her sister, he would reach over her sister, put his hand underneath her pajamas

and underwear, and touch both the outside and the inside of her vagina. C.R. said that she would try to roll away from him, but that he would then try to get closer to her. Kruschwitz testified that when she asked C.R. to use the anatomical charts to demonstrate what body part her father used to touch her and where he touched her, C.R. circled the hand on the male chart and the vagina on the female chart.

Kruschwitz testified that during the interview, C.R. made multiple drawings. Kruschwitz identified People's Exhibit 6 as a drawing that C.R. made during the meeting. Kruschwitz testified that Exhibit 6 was a drawing of C.R. lying in her bed with her father standing next to her. According to Kruschwitz, C.R. stated that it was a picture of when her father tried to put his penis in her mouth. C.R. wrote the word "Dad" above the standing figure, circled what was supposed to be her father's penis (located in the picture just below the figure's waist), and stated that this was the part that went into her mouth. Kruschwitz testified that she wrote the words "Bed wearing P.J's" on the picture, because C.R. explained that she was in her bed wearing her pajamas.

Kruschwitz identified People's Exhibit 7 as another drawing that C.R. made during the meeting. In the picture is a large hand next to the figure of a girl. Kruschwitz testified that C.R. wrote the word "Dad" above the hand and her name above the girl. Kruschwitz testified that C.R. also wrote the words "He is touching my privant [sic]."

Finally, Kruschwitz identified People's Exhibit 9 as a piece of paper containing two drawings that C.R. made during the meeting. In the drawing on the left, there are three faces above a large rectangle. Kruschwitz testified that C.R. stated that the drawing was a picture of her, her sister, and her dad sleeping in a bed. Above the face on the left is C.R.'s name, above the face in the middle is the word "sister," and above the face on the right is the word "Dad," all written by Kruschwitz. Also written by Kruschwitz were the words "put his hand over Dan[ielle] and she scoots in corner." Kruschwitz testified that C.R. explained that her dad would put his hand over her sister to touch C.R.'s vagina. C.R. would then scoot into the corner. The drawing on the right depicts a couch with two figures sitting on it. The figure on the right, which is larger than the figure on the left, has a disproportionately long arm that is reaching toward the figure on the left. Above the smaller figure is C.R.'s name, and above the larger figure is the word "Dad." Also written on the page is the word "hand" with a line pointing to the arm of the larger figure and the words "couch in living room." Kruschwitz testified that she wrote those words because C.R. told her that the drawing was of C.R. and her father sitting on the couch when her father touched her vagina.

On cross-examination, Kruschwitz testified that as an investigator with DCFS, she is required to notify law enforcement when an allegation of child sexual abuse is received and to set up an interview with the child.

Following Kruschwitz's testimony, the State rested. Defendant made a motion for a directed verdict, and the trial court granted it as to counts III, VI, and VII, but denied it as to counts I, II, IV, and V. Defendant rested without presenting the testimony of any witnesses. Following closing arguments, the case was tendered to the jury. The jury returned verdicts of guilty on counts I, II, and V, and a verdict of not guilty on count IV.

Defendant filed a motion for judgment notwithstanding the verdict or, alternatively, for a new trial. At the hearing on the motion, defendant argued, among other things, that defendant's confrontation rights, as delineated in *Crawford*, were violated when C.R. was unavailable for cross-examination at trial but her statements to Bare and Kruschwitz were admitted through their testimony. The State argued that C.R. did testify, for purposes of defendant's confrontation rights, when she identified the drawings she made during her meeting with Kruschwitz and stated that she had created them. The State contended that through those drawings, C.R. testified as to the substance of the allegations against defendant. The trial court found that the statements C.R. made to Bare were not testimonial and, thus, were not subject to *Crawford*. The trial court also found, however, that the statements C.R. made to Kruschwitz were testimonial and, thus, subject to *Crawford*. The trial court found that because C.R. was not available at trial for cross-examination, the statements C.R. made to Kruschwitz should have been excluded under *Crawford*. Consequently, the trial court entered judgments of acquittal as to counts II and V, but denied defendant's motion as to count I, finding that the "statutory and constitutional safeguards were followed" with respect to that count.

The trial court then held the sentencing hearing, during which it sentenced defendant to 24 years' imprisonment on count I. Following an unsuccessful motion to reconsider the sentence, defendant appealed. We initially dismissed this appeal for lack of jurisdiction on February 27, 2009, having found that defendant's notice of appeal was premature. *People v. Garcia-Cordova*, No. 2—07—0550 (2009) (unpublished order under Supreme Court Rule 23). The Illinois Supreme Court issued a supervisory order on April 7, 2009, which vacated our February 27, 2009, order and directed us to treat defendant's notice of appeal as validly filed.

## ANALYSIS

On appeal, defendant raises three issues: (1) whether Kruschwitz's testimony regarding C.R.'s statements during the interview was inadmissible under *Crawford*; (2) whether the trial court erred in admitting evidence that defendant had been sexually abused as a child; and (3) whether the trial court abused its discretion in sentencing defendant to 24 years' imprisonment.

### A. *Crawford*

Defendant first argues that Kruschwitz's testimony regarding C.R.'s statements during the interview was inadmissible under *Crawford* because C.R.'s statements to Kruschwitz were testimonial and C.R. was unavailable for cross-examination.[2]

In the cases of *People v. Melchor*, 226 Ill. 2d 24, 33-34 (2007), and *In re E.H.*, 224 Ill. 2d 172, 179 (2006), our supreme court stated that the appellate court should first determine the admissibility of out-of-court statements as an evidentiary matter and only then proceed to the constitutional claims, because cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort. In our case, defendant acknowledges that the statements C.R. made to Kruschwitz were properly admitted pursuant to section 115—10 of the Code. Consequently, he has conceded the admissibility of the statements under evidentiary principles, and we will proceed with the constitutional analysis. We review *de novo* whether a person's constitutional rights have been violated. *People v. Burns*, 209 Ill. 2d 551, 560 (2004).

In *Crawford*, the United States Supreme Court held that, under the confrontation clause of the United States Constitution, a testimonial statement of a witness who does not testify at trial is inadmissible unless (1) the witness is unavailable to testify, and (2) the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 53-54, 158 L. Ed. 2d at 194, 124 S. Ct. at 1365. Subsequently, in *Davis v. Washington*, 547 U.S. 813, 165 L. Ed. 2d 224, 126 S. Ct. 2266 (2006), the Court made clear that the confrontation clause does not apply to nontestimonial statements. *Davis*, 547 U.S. at 821,

---

[2]In view of the fact that the State did not raise the issue of forfeiture in its brief, we express no opinion as to whether defendant's failure to attempt a cross-examination of C.R. at trial resulted in forfeiture of defendant's contention that C.R. was unavailable for cross-examination. See *People v. Williams*, 193 Ill. 2d 306, 347-48 (2000) ("The rules of waiver are applicable to the State as well as the defendant in criminal proceedings, and the State may waive an argument that the defendant waived an issue by failing to argue waiver in a timely manner").

165 L. Ed. 2d at 237, 126 S. Ct. at 2273 ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause"). In the present case, the State concedes that C.R.'s statements to Kruschwitz were testimonial.

The Supreme Court in *Crawford* also held that where "the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 197 n.9, 124 S. Ct. at 1369 n.9. Thus, we are presented with the question of whether C.R. was available for cross-examination at trial. Defendant argues that although C.R. was physically present and answered some preliminary questions, she was not present for purposes of cross-examination, because she denied remembering that anything happened to her on the couch or the bed, why she spoke with Kruschwitz, seeing the female anatomical charts used by Kruschwitz during their meeting, or drawing People's Exhibit 6. Defendant also points out that C.R. also testified that she did not know the context of People's Exhibits 7 and 9, why she drew pictures of herself and defendant, what part of the body the bottom of a bathing suit covered, or whether there were certain parts of her body that should not be touched. According to defendant, based on C.R.'s testimony, she was unavailable for cross-examination on her statements to Kruschwitz, because he would have been forced to first elicit the damaging testimony from C.R. and then attempt to refute it.

In support of his contention, defendant relies on the definition of availability utilized in *People v. Learn*, 371 Ill. App. 3d 701 (2007), a case analyzing whether a child was available for purposes of section 115—10 of the Code. In *Learn*, a panel of this court held that a child witness was unavailable for purposes of section 115—10 of the Code where after admitting that she knew the defendant as her aunt's husband and stating that she did not like the defendant but did not know why, the witness began to cry and did not answer any more questions. *Learn*, 371 Ill. App. 3d at 705-07. In holding that the child was unavailable, the *Learn* court stated that "[a] child witness is considered unavailable if the child is unwilling or unable to testify because of fear, unable to communicate in the courtroom setting, or declared incompetent because she is incapable of expressing herself so as to be understood concerning the matter." *Learn*, 371 Ill. App. 3d at 708. It also stated that "a witness's mere presence in court to answer general questions without testifying about the alleged offense is [not] sufficient to qualify as an appearance pursuant to section 115—10." *Learn*, 371 Ill. App. 3d at 709.

Subsequent to the filing of defendant's opening brief in the present case, our supreme court issued its decision in the case of *In re Rolandis G.*, 232 Ill. 2d 13 (2008). There, the child witness answered some preliminary questions and identified the respondent as someone he knew from his neighborhood. *Rolandis G.*, 232 Ill. 2d at 18. The child witness, however, refused to respond to questions regarding the events that took place on the day the respondent allegedly assaulted the witness. *Rolandis G.*, 232 Ill. 2d at 18. The respondent's counsel was offered the opportunity to cross-examine the witness but declined to do so. *Rolandis G.*, 232 Ill. 2d at 18. The supreme court held that the witness's videotaped out-of-court statements to a child advocate were inadmissible under *Crawford* because the statements were testimonial, the witness did not testify at trial, and there had been no prior opportunity for cross-examination. *Rolandis G.*, 232 Ill. 2d at 33. The court did not provide any analysis explaining its conclusion that the witness did not testify at trial.[3]

Subsequent to its decision in *Rolandis G.*, the supreme court vacated the *Learn* opinion and directed this court to reconsider its decision in light of the *Rolandis G.* opinion. *People v. Learn*, 231 Ill. 2d 644 (2009). Thus, *Rolandis G.* is currently the most recent case discussing *Crawford* in the context of a child witness's testimony.

Due to the absence of any detailed discussion in *Rolandis G.* regarding the child's availability, *Rolandis G.* stands, at most, for the proposition that where a child answers some preliminary questions unrelated to the allegations but refuses to answer in any form substantive questions regarding the allegations, the child is unavailable. That proposition, however, provides little guidance in the present case, where C.R. did not refuse to answer questions, but instead answered many of the questions regarding the allegations of defendant's abuse and C.R.'s statements to Kruschwitz by stating that she either did not remember or did not know the answer.

While *Rolandis G.* is distinguishable in this regard from the present case, other cases that are more factually similar to the present case, and whose precedential value is unaffected by the decision in *Rolandis G.*, aid us in our decision. Based on these cases, we determine that C.R. was available for cross-examination, despite her claimed loss of memory and lack of knowledge.

The United States Supreme Court, in discussing a witness's availability for purposes of a defendant's rights under the confrontation clause, has stated on more than one occasion that "the Confrontation

---

[3]The State in *Rolandis G.* conceded on appeal that the child witness did not appear for purposes of cross-examination. *Rolandis G.*, 232 Ill. 2d at 22.

Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Emphasis in original.) *Delaware v. Fensterer*, 474 U.S. 15, 20, 88 L. Ed. 2d 15, 19, 106 S. Ct. 292, 294 (1985); see also *United States v. Owens*, 484 U.S. 554, 559, 98 L. Ed. 2d 951, 957, 108 S. Ct. 838, 842 (1988), cited with approval in *People v. Sutton*, 233 Ill. 2d 89, 121-22 (2009). Illustrating this principle, in both *Owens* and *Fensterer*, the Court held that the defendants' rights under the confrontation clause were not violated when witnesses could not recall the basis for their expert opinion and identification of a defendant, respectively. *Owens*, 484 U.S. at 559-60, 98 L. Ed. 2d at 958, 108 S. Ct. at 842-43; *Fensterer*, 474 U.S. at 19-20, 88 L. Ed. 2d at 19-20, 106 S. Ct. at 294-95. In both cases, the Court stated with respect to a witness's claimed lack of memory:

> " 'The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.' " *Owens*, 484 U.S. at 558, 98 L. Ed. 2d at 957, 108 S. Ct. at 842, quoting *Fensterer*, 474 U.S. at 21-22, 88 L. Ed. 2d at 21, 106 S. Ct. at 295.

The Court also recognized that while the mechanisms used to assail a witness's statements when the witness claims a loss of memory may not always be successful, "successful cross-examination is not the constitutional guarantee." *Owens*, 484 U.S. at 560, 98 L. Ed. 2d at 958, 108 S. Ct. at 843.

The principles announced in *Owens* and *Fensterer* have been applied consistently in Illinois cases similar to the case at bar. In *People v. Flores*, 128 Ill. 2d 66 (1989), the defendant was on trial for murder. One of the witnesses who testified at trial for the State also testified during the grand jury proceedings. At the grand jury proceedings, the witness testified that the defendant had told him that the defendant had shot the victim. At trial, however, the witness testified that he did not recall having a conversation with the defendant regarding the victim's death and that while he recalled testifying at the grand jury proceedings, he could not recall the content of his testimony. Upon being confronted with a transcript of his grand jury testimony, the witness acknowledged that he testified during the grand jury proceedings that defendant told him that defendant had shot the victim. *Flores*, 128 Ill. 2d at 78-79. The defendant argued that the admission of the

witness's grand jury testimony violated his confrontation rights because the witness's claimed memory loss deprived the defendant of the opportunity to cross-examine the witness on the prior statements. *Flores*, 128 Ill. 2d at 88. Relying on *Owens*, our supreme court held that the defendant's confrontation rights were not violated, because "a gap in the witness' recollection concerning the content of a prior statement does not necessarily preclude an opportunity for effective cross-examination." *Flores*, 128 Ill. 2d at 88.

Similarly, the Illinois Appellate Court has held on numerous occasions that claims of memory loss and denials of making previous statements do not necessarily require a finding that the witness was unavailable for cross-examination. See, *e.g.*, *People v. Hampton*, 387 Ill. App. 3d 206, 209, 216 (2008) (witness available for cross-examination despite testimony that he could not recall anything about the crime other than that someone was shot and a red car was involved and he could not recall making any identifications or testifying at a co-defendant's trial); *People v. Monroe*, 366 Ill. App. 3d 1080, 1086-88 (2006) (defendant not denied opportunity for cross-examination where child witnesses denied making statements that the defendant had sexually abused them); *People v. Bueno*, 358 Ill. App. 3d 143, 154-55 (2005) (witness was available for cross-examination despite testimony that the witness did not remember details about a statement he gave to police and refused to answer some questions on direct examination, but answered all questions on cross-examination).

In the cases of *People v. Watkins*, 368 Ill. App. 3d 927, 929 (2006), and *People v. Wheatley*, 187 Ill. App. 3d 371, 376 (1989), the witnesses answered virtually every question put to them with "I don't remember," "I don't recall," or "I don't know." In both cases, the defendants argued that the witnesses were not available for cross-examination on prior statements they had made that were admitted into evidence. *Watkins*, 368 Ill. App. 3d at 931; *Wheatley*, 187 Ill. App. 3d at 380. The *Watkins* and *Wheatley* courts held, relying, *inter alia*, on *Owens* and *Flores*, that the witnesses were available for cross-examination because they appeared at trial and willingly answered the questions put to them. *Watkins*, 368 Ill. App. 3d at 932; *Wheatley*, 187 Ill. App. 3d at 380-81.

■ Based on these cases, we conclude that C.R. was available for cross-examination. C.R. appeared at trial and testified under oath. She was able to make an in-court identification of defendant. She testified that she recalled speaking with Kruschwitz and that Lother was present when she spoke with Kruschwitz. She also testified that during her meeting with Kruschwitz, she made several drawings, some of which she identified during her testimony. With respect to the draw-

ings she identified, she was able to describe who was depicted in the drawings. Although C.R. testified that she was unable to recall what she spoke with Kruschwitz about, what the activities depicted in the drawings were, and whether anything had happened to her on the couch or in the bed, and although she did not know the context of some of the drawings or why she drew them, she did answer all of the questions put to her on those subjects. She did not refuse, like the child witness in *Rolandis G.* did, to answer the questions; rather, she simply testified that she could not remember or did not know.

Although defendant chose not to cross-examine C.R., we cannot conclude that she was unavailable for such cross-examination had defendant chosen otherwise. Defendant was free to cross-examine C.R. on her descriptions of the drawings she made. He was also free to cross-examine C.R. on her inability to remember her conversation with Kruschwitz or the alleged incidents of abuse and on her claimed lack of knowledge regarding some of the pictures. In fact, C.R.'s testimony that she could not recall her conversations with Kruschwitz, could not recall the incidents of abuse, and did not know the context of some of the drawings could be considered "friendly" cross-examination. See *Monroe*, 366 Ill. App. 3d at 1088. It also could have been emphasized in arguing the issue of C.R.'s credibility to the jury. See *Owens*, 484 U.S. at 562, 98 L. Ed. 2d at 959, 108 S. Ct. at 844 (a witness's assertion of memory loss "is often the very result sought to be produced by cross-examination, and can be effective in destroying the force of the prior statement").

■ Even if we were to conclude that C.R. was unavailable for cross-examination and that defendant's confrontation rights under *Crawford* were thus violated by the admission of Kruschwitz's testimony, we determine that such an error was harmless. Violations of a defendant's confrontation rights under *Crawford* are subject to harmless-error review. *Rolandis G.*, 232 Ill. 2d at 43. The question is whether it appears beyond a reasonable doubt that the error did not contribute to the verdict obtained. *Rolandis G.*, 232 Ill. 2d at 43, citing *People v. Stechly*, 225 Ill. 2d 246, 304 (2007). "When deciding whether error is harmless, a reviewing court may (1) focus on the error to determine whether it might have contributed to the conviction; (2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction; or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence." *Rolandis G.*, 232 Ill. 2d at 43.

■ We determine that Kruschwitz's testimony regarding C.R.'s statements was merely cumulative and duplicative of the properly admitted evidence presented at trial. With respect to the allegation

that defendant placed his penis in C.R.'s mouth (the conduct alleged in count I, which was the only count on which a judgment of conviction was entered), Kruschwitz testified that C.R. stated that a few weeks prior to the meeting with Kruschwitz, defendant came into her bedroom, touched her lips with his penis, and then placed his penis in her mouth. C.R. stated that she then rolled off the bed onto the floor, at which point defendant tried a second time to place his penis in her mouth. Kruschwitz also testified that C.R. stated that defendant's penis was soft, nothing was on it, and nothing came out of it. These statements are nearly identical to the oral statement defendant gave to Lother and Henderson. Lother testified that defendant stated that three weeks prior to the interview (which took place the same day that Kruschwitz met with C.R.), he went into C.R.'s bedroom, pulled down his pants, rubbed his penis on C.R.'s lips, and then placed his penis in C.R.'s mouth. Defendant also told Lother that when he did this, C.R. rolled away. Further, just as C.R. described defendant's penis as being soft, having nothing on it, and not producing anything, defendant told Lother that he did not have an erection and did not ejaculate. In addition, Bare testified that C.R. told her that defendant made her put his "thing" in her mouth.

Defendant contends that Kruschwitz's testimony regarding C.R.'s statements was substantially more detailed than the other evidence and that People's Exhibit 6 (which, according to Kruschwitz, depicted defendant in C.R.'s room when he put his penis in her mouth) made the allegations "all the more vivid." We disagree. As discussed above, the oral statement that defendant gave to Lother and Henderson was just as detailed as C.R.'s statements to Kruschwitz. We note specifically that defendant described the same sequence of events as C.R.: touching his penis to her lips followed by putting his penis in her mouth. Both C.R. and defendant stated that C.R. rolled away, and both stated, in different terms, that defendant's penis was not erect and that he did not ejaculate. People's Exhibit 6 did not depict anything other than what defendant described to Lother and Henderson. In fact, defendant's statement is far more descriptive than the picture, as he described the specific physical contact that took place in C.R.'s bedroom, while the picture only shows C.R. in her bed with defendant standing next to her.

Defendant also argues that the admission of Kruschwitz's testimony was not harmless because she asked questions to determine whether C.R. knew the difference between the truth and a lie, adding credibility to C.R.'s statements and undermining defendant's chief defense, that his statement to police was coerced. Again, we disagree. Kruschwitz testified that she attempted to establish whether C.R.

knew the difference between the truth and a lie. Her testimony that C.R. appeared to know the difference between the truth and a lie, however, was objected to by defense counsel and the trial court sustained the objection. The State was unable to elicit any other testimony that established that during the interview with Kruschwitz, C.R. demonstrated that she knew the difference between the truth and a lie. At most, the admitted portions of Kruschwitz's testimony established that C.R. knew that it was better to tell the truth than to tell a lie; it did not establish, however, that C.R. knew what the truth was as opposed to a lie.

We also conclude that any error in the admission of the entirety of Kruschwitz's testimony was harmless because the evidence of defendant's guilt on count I was overwhelming, even putting aside Kruschwitz's testimony. In addition to Bare's testimony regarding C.R.'s statement that defendant made her put his "thing" in her mouth, the State presented defendant's very specific oral statement to police and his written statement. In his written statement, defendant simply stated that he put his penis around C.R.'s lips. In his oral statement to police, however, defendant provided great detail, explaining that approximately three weeks prior to the interview, he entered C.R.'s bedroom, pulled down his pants, and rubbed his penis on C.R.'s lips, at which point C.R. rolled away. He stated that he then put his penis in C.R.'s mouth. In addition, defendant told police that he did not have an erection and that he did not ejaculate. All of the evidence presented at trial was consistent with defendant's confession.

Defendant argues that his oral statement to police "did not jibe with" his written statement, in that he orally told police that he put his penis in C.R.'s mouth, while in his written statement he stated that he had put his penis "around [C.R.'s] lips." Defendant ignores, however, that Lother testified that defendant also orally stated that he rubbed his penis on C.R.'s lips. Such evidence certainly corresponds with defendant's written statement and describes the element of sexual penetration.

Defendant also contends that Lother's and Henderson's testimony that during the interview, Henderson yelled at defendant in a "loud, commanding voice" indicates that defendant's statement may have been coerced. This contention is equally without merit, as the uncontradicted testimony of both Lother and Henderson demonstrates that Henderson did not use his "loud, commanding voice" until *after* defendant had already admitted that he had rubbed his penis on C.R.'s lips and put his penis in her mouth. We cannot agree that defendant's admissions were coerced by something that did not occur until after defendant had already made the admissions.

Accordingly, we conclude that the evidence of defendant's guilt on count I was overwhelming. See *People v. Harris*, 389 Ill. App. 3d 107, 118-24 (2009) (determining the exclusion of certain testimony was harmless because the defendant's confession, corroborated only by the fact that the victim's death was a homicide, was overwhelming evidence of the defendant's guilt, despite the defendant's contention that her confession was coerced); *People v. Spicer*, 379 Ill. App. 3d 441, 458 (2008) (holding that the improper admission of evidence was harmless where the defendant's unrefuted and unrecanted statement that he had put his finger in the victim's vagina was overwhelming evidence that the defendant had penetrated the victim); *People v. Argo*, 133 Ill. App. 3d 421, 430 (1985) (concluding that exclusion of certain evidence was harmless where the defendant's confession—the only evidence connecting the defendant to the murder—provided overwhelming evidence supporting the defendant's conviction).

As we find that Kruschwitz's testimony regarding C.R.'s statements to her was merely cumulative and duplicative of the properly admitted evidence and that the evidence of defendant's guilt was overwhelming, we find any error in the admission of Kruschwitz's testimony regarding C.R.'s statements to be harmless. See *Rolandis G.*, 232 Ill. 2d at 43 (error is harmless where improperly admitted evidence is merely cumulative or duplicative of the properly admitted evidence).

## B. Evidence of Sexual Abuse

Defendant next contends that the trial court erred in admitting evidence that defendant had been sexually abused as a child. Defendant argues that because it is well known that people who are sexually abused as children are more likely as adults to sexually abuse others and because evidence that defendant had been sexually abused went only to show propensity, such evidence was irrelevant and unduly prejudicial. We disagree that the trial court erred in admitting the evidence.

Evidence is admissible when it is relevant to an issue in dispute and its probative value is not substantially outweighed by its prejudicial effect. *People v. Gonzalez*, 142 Ill. 2d 481, 487 (1991). "Evidence is considered relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of an action either more or less probable than it would be without the evidence." *People v. Morgan*, 197 Ill. 2d 404, 455-56 (2001). It is within the trial court's discretion to determine whether evidence is relevant and admissible, and the trial court's decision on the issue will not be reversed absent an abuse of discretion. *Morgan*, 197 Ill. 2d at 455. A

trial court abuses its discretion where its decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the trial court's view. *Morgan*, 197 Ill. 2d at 455.

In the present case, the trial court found the evidence that defendant had been sexually abused as a child to be relevant because such evidence could establish a motive on defendant's part. We need not decide whether evidence that defendant had been sexually abused as a child was relevant to the issue of motive, because we determine that it was relevant to the credibility of defendant's statements to police and to the context in which defendant made his oral and written statements to the police. See *People v. Jefferson*, 184 Ill. 2d 486, 498 (1998) (stating that the issue of the credibility of a confession is an issue for the jury and evidence weighing on the credibility of the confession may be presented); see also 725 ILCS 5/114—11(f) (West 2006) ("The circumstances surrounding the making of the confession may be submitted to the jury as bearing upon the credibility or the weight to be given to the confession"). Although the relevance of the disputed evidence in the context of the police's interrogation of defendant was not addressed by the trial court, we may affirm for any reason warranted by the record, regardless of the reasons relied on by the trial court. *People v. Nash*, 173 Ill. 2d 423, 432 (1996).

At trial, Lother testified that during his questioning of defendant, defendant initially denied the allegations that he had abused C.R. Defendant did not give the oral and written statements indicating that he had abused C.R. until after he had revealed that he had been sexually abused as a child and Lother had told defendant that people who are abused sometimes abuse others because that is how they express love. Lother testified that once he told defendant that people who are abused sometimes abuse others as an expression of love, defendant's "demeanor changed. His arms became more relaxed and he began leaning towards [Lother]." Following Lother's continued discussion of defendant's childhood abuse, defendant made his oral and written statements indicating that he had abused C.R. Such evidence thus was certainly relevant to the circumstances under which defendant made his statements. In addition, such evidence went to the credibility of those statements, as it indicates that defendant may have given his statements as a result of a feeling of comfort and understanding from Lother, rather than as a result of Henderson's use of a "loud, commanding voice."

Defendant contends that even if the evidence that he had been sexually abused was relevant, its probative value was substantially outweighed by its prejudicial effect, because the jury was likely to believe that because defendant was sexually abused as a child, he was

more likely to have abused C.R. Even where evidence is relevant, that evidence still may be excluded on the basis that its prejudicial effect substantially outweighs its probative value. *People v. Hoerer*, 375 Ill. App. 3d 148, 157 (2007). "It is the function of the trial court to weigh the probative value and prejudicial effect of evidence in determining whether it should be admitted," and the trial court's decision will not be overturned absent a clear abuse of discretion. *Gonzalez*, 142 Ill. 2d at 489-90. We determine that the trial court did not abuse its discretion.

The record demonstrates that during the presentation of the evidence that defendant had been sexually abused, the trial court took care to ensure that the evidence was presented in the limited context of the interrogation of defendant by the police. The trial court also allowed Lother to testify only as to what he specifically said to defendant during the interrogation, keeping out any testimony by Lother about whether he knew that people who had been abused as children actually were more likely to become abusers as adults. Although the State, during its rebuttal argument, twice argued that defendant's childhood abuse caused him to abuse C.R., defendant objected and the trial court quickly sustained those objections. In delivering the jury instructions, the trial court instructed the jury to disregard matters to which objections were sustained and that closing arguments were not evidence. We also note that no other evidence was presented that would allow the jury to reach the conclusion that defendant was more likely to abuse children because he had been abused as a child, and the trial court instructed the jury to base its decision only on the evidence presented at trial. Further, just as defendant argues that the jury may have been prejudiced against him because he was sexually abused as a child, so too could the jury have felt deep sympathy for him as a child victim.

We conclude that the trial court did not abuse its discretion in admitting the evidence that defendant had been sexually abused as a child, because any prejudicial effects the evidence may have had were minimized by the very limited context in which the trial court allowed the evidence. Thus, the prejudicial effects of the evidence did not substantially outweigh its highly probative value on the issue of the credibility of defendant's confession.

Even if the trial court erred in admitting the evidence that defendant had been sexually abused as a child, we conclude that the error was harmless. The erroneous admission of evidence is subject to harmless-error analysis and is considered harmless if there is overwhelming evidence of the defendant's guilt. *People v. Lombardi*, 305 Ill. App. 3d 33, 44 (1999). As discussed in the previous section, the

evidence of defendant's guilt on count I was overwhelming, even putting aside Kruschwitz's testimony. When Kruschwitz's testimony regarding C.R.'s statements is taken into consideration, the evidence supporting defendant's conviction on count I becomes more than overwhelming. Kruschwitz's testimony consisted primarily of C.R.'s statements, which were consistent with Bare's testimony of C.R.'s statement to her, defendant's oral statement, and defendant's written statement. In fact, the statements to which Kruschwitz testified nearly matched exactly defendant's highly detailed oral statement to police. Therefore, any error in admitting evidence that defendant was abused as a child was harmless.

## C. Sentencing

■ Defendant finally argues that the trial court abused its discretion in sentencing him to 24 years' imprisonment, because the trial court failed to adequately consider numerous mitigating factors and considered some mitigating factors as aggravating factors.

The sentence imposed by a trial court is entitled to great deference, and when the sentence is within the statutory limits, it may be disturbed only where the trial court has abused its discretion. *People v. Bosley*, 233 Ill. App. 3d 132, 139 (1992). So long as the trial court " 'does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors, it has wide latitude in sentencing a defendant to any term within the statutory range prescribed for the offense.' " *Bosley*, 233 Ill. App. 3d at 139, quoting *People v. Hernandez*, 204 Ill. App. 3d 732, 740 (1990). The trial court has no obligation to recite and assign value to each factor presented at a sentencing hearing. *People v. Baker*, 241 Ill. App. 3d 495, 499 (1993). Where mitigating evidence is presented to the trial court during the sentencing hearing, we may presume that the trial court considered it, absent some indication, other than the sentence itself, to the contrary. *People v. Dominguez*, 255 Ill. App. 3d 995, 1004 (1994). As the reviewing court, we are not to reweigh the factors considered in determining the defendant's sentence; nor are we to substitute our judgment for that of the trial court simply because we would have weighed the factors differently. *People v. Jones*, 376 Ill. App. 3d 372, 394 (2007).

Defendant contends that the trial court failed to adequately consider certain mitigating evidence in imposing his sentence. Specifically, defendant argues that the trial court did not adequately consider evidence of defendant's minimal criminal history, supportive family, steady employment, and high school graduation, all of which defendant contends demonstrated his rehabilitative potential. Defendant also argues that the trial court did not adequately consider his drug and

alcohol addictions and the lack of physical injury to C.R. The record belies defendant's contentions. The trial court explicitly stated at the sentencing hearing that it had considered the letters submitted by defendant's family in support of him and that it had reviewed defendant's criminal history, noting that it consisted of a conviction of petty theft and a conviction of burglary. The trial court also stated that it had considered the presentence investigation report. The presentence investigation report indicated defendant's minimal criminal history, the fact that he had graduated high school, his drug and alcohol use, and his steady employment history. Finally, the trial court stated that it recalled the trial evidence. The fact that C.R. did not suffer a physical injury came to light during trial. As the record demonstrates that the trial court considered all of the evidence raised by defendant on appeal, defendant's contention seems to be only that the trial court did not give enough weight to the evidence. We are not, however, permitted to disturb the sentence imposed by the trial court simply because we would weigh the evidence differently. *People v. Streit*, 142 Ill. 2d 13, 19 (1991). Moreover, although a defendant's rehabilitative potential must be taken into account, a defendant's rehabilitative potential does not outweigh other factors warranting a severe sentence, including the seriousness of the offense. *Baker*, 241 Ill. App. 3d at 499.

Defendant also argues that the trial court improperly considered his remorse and the fact that he was sexually abused as a child as factors in aggravation. In so arguing, defendant relies on the following comments by the trial court during the sentencing hearing:

"I look at this case and in trying to get an understanding of you, Mr. Cordova, you as the person, I find it interesting that someone with your background, a person who tells us the story about how you were sexually abused in a number of foster homes at the hands of a number of foster parents, that having that as a backdrop or in your background that that would put you in a situation where you find yourself today being found and convicted of having sexually abused a young child. You told the law enforcement officers when you gave them the statement that you felt bad about having done what you told them you had done in this particular case, placing your penis on the lips of a child and placing your hand on a child's vagina, a very young child. Your statement to them about how bad you felt this Court can only imagine how this young child felt when you were doing the things that you did to this child."

The trial court also stated:

"I read the fact that the young victim in this case has been involved in counseling and it's pretty clear that this traumatic experience warrants that. Mr. Cordova, it's you that put this in motion. You

are the one that has subjected this young child to this treatment—requiring counseling rather. And again it just escapes this Court as to why somebody with your experiences of your own would put this young child through this incident here."

We cannot agree that these statements by the trial court indicate that it considered defendant's remorse and childhood abuse as aggravating factors. Rather, the statement regarding defendant's remorse indicates that the trial court considered defendant's remorse but afforded it little weight when balanced against the seriousness of the offense and the psychological harm done to C.R. as a result. See *People v. Leggans*, 253 Ill. App. 3d 724, 737 (1993) (psychological harm done to a child as a result of sexual abuse is properly considered as an aggravating factor); *People v. Pavlovskis*, 229 Ill. App. 3d 776, 782 (1992) (same). Similarly, the trial court's comments on defendant's childhood abuse were made in the context of evaluating the seriousness of the offense and the psychological harm done to C.R. as a result. The trial court's comments indicate that it believed defendant should understand the seriousness of the offense and the harm that results from sexual abuse, given that defendant himself suffered such abuse. *Cf. Baker*, 241 Ill. App. 3d at 498 (agreeing with the trial court that the defendant, who suffered sexual abuse as a child, should have been aware of the psychological trauma that results from such abuse). Nothing, however, indicates that the trial court believed that defendant should receive a greater sentence because he was abused as a child.

Accordingly, we determine that the trial court did not abuse its discretion in sentencing defendant to 24 years' imprisonment.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

BURKE and HUDSON, JJ., concur.